# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**DARREN NORMAND**                                 **CASE NO.  6:24-CV-00802**

**VERSUS**                                         **JUDGE DAVID C. JOSEPH**

**SOCIAL SECURITY**                                **MAGISTRATE JUDGE CAROL B.**
**ADMINISTRATION**                                 **WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Darren Normand, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for supplemental security insurance benefits, alleging disability beginning on September 1, 2018.[1] His application was denied. He then requested a hearing, which was held on August 17, 2023, before Administrative Law Judge Steven Rachal. The ALJ issued a decision on November 21, 2023, concluding that Claimant was not disabled within the

---

[1] Claimant's application identifies the onset date as September 1, 2018. The date stated at the hearing and in the ALJ's decision is September 1, 2011.

meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 6-1, p. 19-33). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 6-1, p. 6-). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on June 20, 1959. He was 59 years old on the alleged disability onset date and 64 years old at the time of the ALJ's decision. He has an eleventh-grade education. (Rec. Doc. 6-1, p. 46). He last worked in 2014, when he briefly attempted crawfishing. (Rec. Doc. 6-1, p. 47-48). Otherwise, he last worked as a heavy equipment operator and then a foreman in 2009. (Rec. Doc. 6-1, p. 47-48; 222). He alleges that he has been disabled since 2011 due to arthritis, degenerative joint disease, and spine problems. He was recently diagnosed with bladder cancer and skin cancer. (Rec. Doc. 6-1, p. 55-59). At the time of the hearing, he was scheduled to consult with neurosurgery and a podiatrist, as he needed foot surgery. (Rec. Doc. 6-1, p. 59-60). He is technically homeless as he lives with a friend or wherever someone will allow him to stay. (Rec. Doc. 6-1, p. 60).

The medical records in the record reveal the following pertinent history:

2

- A November 2015 lumbar MRI revealed a small broad disc protrusion at L4-5 with bilateral foraminal protrusions; no stenosis at L4-5, but moderately severe bilateral foraminal narrowing due to the protruding disc, decrease in disc height, mild anterolisthesis of L4 on L5, and moderate facet arthropathy; some foraminal narrowing of L2-3, L3-4, and L5-S1 due to bulging or protruding foraminal discs and some facet arthropathy, tiny annular tear at left foraminal disc bulge at L3-4. (Rec. Doc. 6-1, p. 347).

- Claimant had a September 2020 emergency room visit for low back pain, burning in feet, chest pain, and shortness of breath. He was non-compliant with the order to obtain labs and was referred for additional labs and prescribed medication for low back pain with order for CT. (Rec. Doc. 6-1, p. 358-59). By the time of his follow up visit in January 2021, he still had not gotten labs done, and he was instructed to complete labs, EKG and echocardiogram ASAP due to concerns of chest discomfort. He also had overflow incontinence and blood in urine. A biopsy of his chest lesion revealed actinic keratosis, but a more severe lesion could not be ruled out. He is a former smoker and had sustained heavy sun exposure. (Rec. Doc. 6-1, p. 360-64). His medical history includes a plantars wart to the right foot for more than ten years and left knee pain. (Rec. Doc. 6-1, p. 373). He was at times noted as obese (e.g. Rec. Doc. 6-1, p. 386), but did not qualify as such as the time of the hearing (Rec. Doc. 6-1, p. 49-51).

- Claimant saw Christi Carmouche, NP, as his primary care provider in 2021. He was referred to ortho. A June 2021 report from Dr. Sylvest for low back pain indicates that he was injured on the job in 2009. His case was closed after he was told he only had disc bulging. He had not had testing or MRIs for the prior seven years. He had tried physical therapy without relief. He was wearing a back brace. Pain radiated into the right lower extremity with a sticking sensation in the lower extremity. He had stiffness and limited range of motion with occasional numbness of the left leg/ankle. Dr. Sylvest's impression was mechanical lumbar pain, multilevel degenerative disc disease greatest at L4-5, multilevel facet arthropathy lumbar spine, and left lumbar radiculopathy. He was recommended physical therapy and medication. A note from Ms. Carmouche states that Claimant did not agree with the plan of care and intended to find his own orthopedist. He was offered anti-inflammatory medication but refused. (Rec. Doc. 6-1, p. 642-55).

- An October 30, 2021 Med Plus evaluation for the state disability office included a medical history of depression, bulging disc, three ruptured discs,

arthritis in both hands, pain in fee, heel spurs, left knee issues, and carcinoma. A review of medical treatment showed that Claimant had not routinely sought significant treatment for his issues. Claimant's depression did not prevent him from working. He stated that he was able to walk short distances on level ground and had difficulty standing for 0-5 minutes and lifting 0-5 pounds. He was not able to drive, shop for groceries, or climb stairs, but he was able to balance a checkbook. Physical testing showed him able to ambulate without difficulty and bend over and touch his toes. Straight leg raising tests were negative with back pain only. He had normal muscle mentation, 5/5 motor strength in all extremities, and 5/5 grip in both hands. He had normal fine and gross manipulative skills. He had limited range of motions in his cervical and lumbar spines. Ultimately, Dr. Leonards concluded that Claimant had no limitations on his ability to stand, sit, walk, bend or stoop, reach, handle, lift, carry, see, hear or with memory or understanding. He ambulated without difficulty or assistive device. (Rec. Doc. 6-1, p. 392-99).

- Claimant underwent a psychology evaluation in December 2021 with Dr. Amy Cavanaugh. The evaluation shows that he is capable of performing basic self-care skills. He does not drive, but he can manage money and remember to take medication and his appointments. He had a "record of legal entanglements" with an arrest six or seven years earlier for riding a 4-wheeler on the road and breaking a restraining order for which he spent 4.5 months in jail. His reported medical history noted multiple bulging and/or ruptured discs, a plantar wart, a knee problem, arthritis in hands and fingers, and skin cancer. He denied mental health problems other than his pain making him feel down. He had never taken depression medication, though it had been prescribed. He reported leaving the eleventh grade to go to work. He had last worked as a construction foreman for seven years, but he had left his position due to his back injury. On mental status exam, his behavior was within normal limits, with good judgment and insight. He endorsed short-term memory problems, though testing was normal. Findings indicated he had capacity to understand and follow instructions, to sustain concentration and perform tasks, and to relate to supervisors and coworkers. From a psychological perspective, his mental impairments did not preclude him from focusing his attention or sustaining concentration, pace, persistence when performing simple and familiar tasks for extended periods, and he appeared capable of managing his personal financial affairs. (Rec. Doc. 6-1, p. 412-15).

- In August 2022, Claimant had surgery at Ochsner University urology for malignant neoplasm of overlapping sites of bladder, with kidney stones and

gross hematuria. These records show he was on albuterol for shortness of breath. (Rec. Doc. 6-1, p. 428-73). Thereafter, and through October 2022, he was hospitalized and underwent several procedures at the University Medical Center Urology Clinic for his bladder cancer. Following the initial removal of tumor(s), he was going to need a repeat resection to remove residual tumor and to ensure the cancer was not muscle invasive. (Rec. Doc. 6-1, p. 490-630).

- Claimant underwent a second disability evaluation at New Med Plus Lafayette, Dr. Omar Leonards in November 2022. Claimant was still having the same back issues, but he had not done physical therapy or seen orthopedic. He did not take medication for his pain. He saw no doctors but his primary care nurse practitioner. Although he noted the foregoing hospitalization for bladder cancer, he reported no further treatment. Upon exam, his straight leg raising tests were negative with right hip and knee pain. Motor strength and grip strength were normal. He had limited range of motion in the cervical and lumbar spines, knee, and hip. The evaluator acknowledged Claimant's pain but noted that he had not attempted first line medical treatment options such as medication or physical therapy and had seen no specialists. There was no further discussion of his bladder cancer. The evaluator opined that Claimant had no physical or mental limitations. (Rec. Doc. 6-1, p. 631-39).

- Claimant continued care for his bladder cancer in New Orleans. By June 2023, he was doing well, and his only complaint was right groin pain where he had an inguinal hernia. A recent cystoscopy with bladder biopsy in May 2023 showed three small papillary lesions and low grade UC with no muscle involvement. He had completed induction BCG therapy and was to start maintenance BCG soon. (Rec. Doc. 6-1, p. 663-741).

The ALJ found Claimant was not disabled because he is capable of performing medium work with certain physical limitations, and that a significant number of qualifying jobs exist in the national economy. (Rec. Doc. 6-1, p. 19-33). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren*

*v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of

substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. <u>Evaluation Process and Burden of Proof</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can

perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. <u>The ALJ's Findings and Conclusions</u>

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity (SGA) since his application date, October 2, 2020. (Rec. Doc. 6-1, p. 21). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: osteoarthritis, degenerative disc disease, obesity, and hypertension. (Rec. Doc. 6-1, p. 21). Claimant argues the ALJ failed to recognize his bladder cancer as a severe impairment.

9

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 6-1, p. 25). Claimant does not challenge this finding.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform medium work with limitations for frequent climbing of and stairs, and never climbing ladder, etc., frequent balancing, stooping, kneeling, crouching, or crawling. Claimant challenges this finding and argues that even a finding of light duty RFC would potentially qualify him for benefits under the grids.

At step four, the ALJ found Claimant is unable to perform any past relevant work. (Rec. Doc. 6-1, p. 31). Claimant does not challenge this finding.

At step five, the ALJ found a significant number of jobs for which he qualifies exists within the national economy. Claimant challenges this finding to the extent he challenges the ALJ's RFC finding.

### E. The Allegations of Error

Claimant alleges the ALJ erred in assessing a medium RFC because he failed to consider his bladder cancer as a severe impairment and the severity of his low back pain, erroneously relying on administrative medical source evaluations. Claimant further alleges the ALJ erred by failing to find that Claimant qualifies for automatic benefits under a narrow exception for claimants who have no relevant past work.

> **F.  Whether the ALJ erroneously failed to consider Claimant's bladder cancer as a severe impairment.**

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Therefore, in *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe: an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Id.* at 1101. See also *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

Claimant argues the ALJ failed to classify his bladder cancer as a severe impairment, because the ALJ did not consider that Claimant had to wear diapers for frequent urination, that his diagnosis and treatment spanned longer than the requisite one year, and that ongoing chemotherapy caused functional limitations.

11

In analyzing the severity of Claimant's bladder cancer, the ALJ noted that Claimant complained of incontinence on November 15, 2021, was diagnosed with bladder cancer in July 2022, underwent resection of the bladder tumor on August 1, 2022, a bladder repair on September 9, 2022, and completed BCG treatments on December 15, 2022. Although the records show that he was to begin maintenance BCG treatments after June 1, 2023, the record does not show Claimant suffered any functional limitations that would interfere with his work. Rather, the records show that by June 1, 2023, he had been recovering well since the surgery and his only complaint was pain in the right groin from an inguinal hernia. (Rec. Doc. 6-1, p. 663). The medical records and testimony are devoid of any evidence regarding the effect of ongoing cancer treatments. There is no evidence of treatment-induced fatigue, illness, or Claimant having to wear a diaper recently. (See Rec. Doc. 6-1, p. 63). Accordingly, the Court finds that the ALJ did not err in failing to classify Claimant's bladder cancer as a severe impairment. See e.g. *Laborde v. U.S. Com'r of Soc. Sec.*, No. 1:12-CV-02688, 2013 WL 3778909, at *6 (W.D. La. July 17, 2013); *Burns v. Astrue*, No. 4:12-CV-3435, 2015 WL 136558, at *12 (S.D. Tex. Jan. 9, 2015); *Beggs v. Colvin*, No. 4:14-CV-129-O, 2015 WL 5542540, at *4 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted,* No. 4:14-CV-00129-O, 2015 WL 5547010 (N.D. Tex. Sept. 15, 2015) (all finding the claimants' cancer and subsequent treatment did not qualify as a severe impairments).

G. **<u>Whether the ALJ otherwise erroneously formulated Claimant's RFC.</u>**

Claimant further challenges the ALJ's RFC assessment that he is capable of medium duty work, with certain restrictions, based on his back pain. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's

impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Claimant argues the ALJ failed to account for his low back pain and instead improperly relied on Dr. Leonards's medical source evaluations. He urges the Court to consider light duty as a more appropriate RFC, a finding which would automatically entitle him to benefits under "the grids." Although medical evidence in the form of one 2015 MRI shows that Claimant had bulging and/or protruding discs (Rec. Doc. 6-1, p. 347), the medical records do not show substantial treatment or physical limitations. Indeed, Claimant was frequently noted as non-compliant with treatment recommendations. (See e.g. Rec. Doc. 6-1, p. 358-59; 642-55). Dr. Leonards noted as much in his evaluations, and his testing showed essentially normal straight leg tests, with back pain only, normal muscle mentation, motor strength in all extremities, and grip, and that Claimant had no limitations on his ability to stand, sit, walk, bend or stoop, reach, handle, lift, carry, see, hear or with memory or understanding. (Rec. Doc. 6-1, p. 392-99). Following a second evaluation, which was essentially unchanged, Dr. Leonards acknowledged Claimant's pain but noted that he had not attempted first line medical treatment options such as medication or physical therapy and had seen no specialists. (Rec. Doc. 6-1, p. 631-39). Claimant offered no counter-vailing evidence that he is limited by anything other than pain.

Although pain can constitute a disabling impairment, pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985); *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19. Mild or moderate pain is not disabling. Subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence. *Id*.

Relatedly, pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the actual extent of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints

include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii). Since Claimant failed to attempt any recommended therapeutic treatment, and absent substantiating objective medical evidence that he is limited by pain, he cannot rely merely upon his subjective complaints of pain in support of his application. The ALJ correctly evaluated the medical evidence and relied upon Dr. Leonards's medical source assessments.

### H. <u>Whether the ALJ should have applied POMS DI 25010.001.</u>

Claimant last urges the Court to apply the Program Operations Manual System (POMS) DI 25010.001, which provides automatic disability status to a claimant who is not working at SGA level, has a history of 35 years or more of arduous unskilled work, who can no longer perform this past arduous work because of a severe medically determinable impairment(s) (MDI), and has no more than a marginal

education. Under DI 25010.001, disability status is also given to a claimant who meets the lifetime commitment profile, which applies to a claimant who is not working at SGA level, has a lifetime commitment (30 years or more) to a field of work that is unskilled, or that is skilled or semi-skilled but provided no transferable skills, and can no longer perform this past work because of a severe MDI(s), is closely approaching retirement age (age 60 or older), and has no more than a limited education.

The Commissioner correctly points out that Claimant has presented no evidence of an employment history spanning thirty or more years. (See Rec. Doc. 6-1, 244, indicating a work history of, at most, 27 years, with notable gaps as indicated p. 219). Thus, POMS DI 25010.001 does not warrant a finding of disability.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 15th day of November, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).